IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| PHAETHON INTERNATIONAL CO. S.A., | § § | |
| *Plaintiff*, | § § | Civil Action No.: |
| -against- | § § | ADMIRALTY |
| LOUIS DREYFUS CORPORATION, | § § | |
| *Defendant.* | § § | |

## PLAINTIFF'S FIRST ORIGINAL VERIFIED COMPLAINT

Plaintiff, PHAETHON INTERNATIONAL CO. S.A. (hereinafter "Phaethon") or "Plaintiff"), by undersigned counsel, for its Original Verified Complaint against Defendant, LOUIS DREYFUS CORPORATION (hereinafter "LDC" or "Defendant"), alleges and pleads as follows:

### JURISDICTION, VENUE AND PARTIES

1. The Court has subject matter jurisdiction by virtue that the underlying claims herein are admiralty and maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and within the admiralty and maritime jurisdiction of this Court under 28 U.S.C. § 1333.

2. Venue is proper in this District because the Defendant resides within the District and the acts complained of herein occurred in this District.

3. At all times material hereto, Plaintiff, Phaethon, was and still is a foreign corporation with a principal place of business at Mossfon Building, Second Floor, East 54th Street, P.O. Box 0932-0886 WTC, Panama, Republic of Panama. At all times material hereto, Phaethon was the Owner of the M/V ELENA.

4. Upon information and belief, at all times material hereto, Defendant LDC was and

still is a foreign corporation with a place of business at 1745 Buford Street, Beaumont, Texas. At all times material hereto, Defendant LDC was the lessee and operator of the Beaumont Export Elevator located at 1745 Buford Street, Beaumont, Texas.

## FACTUAL BACKGROUND

5. On or about February 27, 2014, the M/V ELENA (hereinafter the "Vessel") arrived at the Beaumont Export Elevator (hereinafter the "Elevator") to load a cargo of 63,000 metric tons wheat in bulk at the Elevator's grain loading berth.

6. Upon the Vessel's arrival at the Elevator, Plaintiff, through its agent, Blue Water Shipping, submitted a Berth Application, certifying that the Vessel was in all respects ready to receive its intended cargo, and in position and condition to expeditiously shift to the berth when ordered. *A copy of the Vessel's Berth Application is attached hereto as Exhibit "1".*

7. The Vessel's Berth Application and Notice of Readiness were accepted by or on behalf of Defendant on March 1, 2014 at 09:00. *See Exhibit "1".* The application and the acceptance of same by Defendant constitutes a contract between Plaintiff and Defendant

8. The contract between Plaintiff and Defendant is a maritime contract.

9. In addition to the conditions agreed between Plaintiff and Defendant in the Berth Application, the parties agreed to abide by all rules and regulations contained within the Beaumont Elevator Grain Tariff. *A copy of LDC's Grain Tariff: Rates, Rules and Regulations Governing the Louis Dreyfus Corporation Beaumont Export Elevator (hereinafter "LDC's Grain Tariff") is attached hereto as Exhibit "2".*

10. As set forth in LDC's Grain Tariff, the Elevator is capable of loading approximately 55,000 bushels (1.497 metric tons) per hour. *See Exhibit "2".*

11. On Monday, March 3, 2014, at 14:01, the M/V ELENA was called to berth by

LDC to commence loading at 19:00. The Vessel was all fast at LDC's grain Elevator by 2048 that same day. *A copy of the Vessel's Statement of Facts is attached hereto as Exhibit "3".*

12. Based on the representations set forth in LDC's Grain Tariff, and the quantity of wheat to be loaded, Plaintiff anticipated that the Vessel would remain at LDC's Terminal for seven (7) days, with estimated dockage fees totaling USD 179,118.00 (*i.e.* – USD 0.60 per GRT times 42,647 GRT times seven (7) days) in accordance with Section III, Item No. 6 of LDC's Grain Tariff. *See Exhibit "2".*

13. Despite this expectation, during the course of the Vessel's stay at LDC's Terminal, the Elevator suffered numerous disruptions and/or maintenance failures, causing a significant decrease in the Elevator's loading rate.

14. Additionally, several times each day, after the Notice of Readiness was accepted by the Terminal, loading was stopped for "elevator cargo grade checks" or "elevator grade checks". *See Exhibit "3".* These delays, over the course of March 4 through March 17, resulted in forty-four (44) hours and twenty (20) minutes worth of stoppages. *See Exhibit "3".*

15. As a result of these stoppages and malfunctions, the M/V ELENA was required to remain at the Elevator, through no fault of its own, for nine (9) days longer than anticipated.

16. Despite its Elevator's own breakdowns necessitating the Vessel's extended stay, Defendant LDC insisted upon the payment by Plaintiff of dockage fees for six (6) additional days (totaling USD 211,040.00) before the Vessel would be permitted to sail.

17. Pursuant to Section I, Item Number 4(f) of LDC's Grain Tariff, "[i]n the event that any item or circumstance arises that is not addressed in the LDC Grain Tariff, the Port of Beaumont's Tariff #006 will be applicable." *See Exhibit "2". A copy of the Port of Beaumont's Tariff #006 is attached hereto as Exhibit "4".*

18. Item 260 of the Port of Beaumont Tariff #006 provides as follows:

*Item 260. General rules applying to machinery*

. . .

*(8) Credit will be allowed for breakdowns occasioned by mechanical failure of Port Authority Equipment when not due to misuse, abuse, overloading or carelessness of user. Credit will be cumulative and allowed on the basis of actual time lost.*

*See Exhibit "4".*

19. Despite the parties' agreement to abide by the rules and regulations set forth in LDC's Grain Tariff, in breach of this agreement, Defendant LDC has failed, neglected, and or otherwise refused to credit Plaintiff for the excess dockage fees Plaintiff paid as a result of mechanical failures and/or other machinery breakdowns entirely outside of Plaintiff's control.

## FIRST CAUSE OF ACTION
### *Breach of Contract*

20. Plaintiff PHAETHON repeats and realleges each and every allegation set forth in paragraphs one (1) through nineteen (19) as if set forth herein at length.

21. On or about March 1, 2014, Plaintiff and Defendant entered into a contractual arrangement whereby Plaintiff's Vessel would load a cargo of 63,000 metric tons of wheat in bulk at Defendant's grain Elevator Terminal, in exchange for payment of dockage fees to Defendant at the rate of USD 0.60 per GRT per calendar day or fraction thereof.

22. Pursuant to the contractual terms agreed by the parties, the Elevator was to load Plaintiff's wheat at the rate of approximately 1,497 metric tons per hour.

23. Despite these representations, during the course of the Vessel's stay at LDC's Terminal, the Elevator suffered numerous stoppages, disruptions and/or maintenance failures, causing a significant decrease in the Elevator's loading rate.

24. Additionally, several times each day, after the Notice of Readiness was accepted by the Terminal, loading was stopped for "elevator cargo grade checks" or "elevator grade checks". *See Exhibit "3"*. These delays, over the course of March 4 through March 17, resulted in forty-four (44) hours and twenty (20) minutes worth of stoppages. *See Exhibit "3"*.

25. As a result of these malfunctions and "grade checks", the M/V ELENA was required to remain at the Elevator, through no fault of its own, for nine (9) days longer than anticipated, incurring daily dockage fees of USD 25,588.20.

26. LDC also required Plaintiff to pay USD 211,040.00 in excess dockage fees to LDC before the Vessel would be permitted to sail from the Elevator Terminal.

27. Pursuant to the Port of Beaumont's Tariff #006, Plaintiff is entitled to credit from Defendant "for breakdowns occasioned by mechanical failure of Port Authority Equipment when not due to misuse, abuse, overloading or carelessness of user." *See Exhibit "4"*.

28. Despite due demand, Defendant has failed, neglected, and/or otherwise refused to reimburse the excess dockage fees paid by Plaintiff as a result of the Elevator's mechanical failures.

29. Accordingly, Plaintiff seeks recovery of damages in an amount not less than USD $211,040.00, exclusive of interest, costs, and attorneys' fees.

## ATTORNEYS' FEES AND COSTS

30. Plaintiff PHAETHON repeats and re-alleges each and every allegation set forth in paragraphs one (1) through twenty-nine (29) as if set forth herein at length.

31. On March 1, 2014, Plaintiff and Defendant entered into a contract. *See Exhibits "1" & "2"*.

32. The parties agreed that Plaintiff's Vessel would load a cargo of 63,000 metric tons

of wheat in bulk at Defendant's grain Elevator Terminal, in exchange for payment of dockage fees to Defendant at the rate of USD 0.60 per GRT per calendar day or fraction thereof.

33. The parties further agreed that Plaintiff would be entitled to credit from Defendant due to "breakdowns occasioned by mechanical failure of Port Authority Equipment when not due to misuse, abuse, overloading or carelessness of user." *See Exhibit "4"*.

34. As a direct result of Defendant's failure to credit Plaintiff for the excess dockage fees incurred and paid due to the Elevator's mechanical failures, Plaintiff has been forced to engage legal counsel to enforce its rights under the contract and has incurred fees and costs.

35. Pursuant to Chapter 38 of the Texas Civil Practices and Remedies Code, Plaintiff is entitled to reasonable and necessary fees from Defendant for its breach of contract.

WHEREFORE PREMISES CONSIDERED, Plaintiff prays as follows:

A. That process in due form of law, according to the practice of this Honorable Court in cases of admiralty and maritime jurisdiction, issue against all Defendants, citing them to appear and answer under oath all, and singular, the matters, alleged in the Verified Complaint;

B. That after due proceedings, judgment be entered in favor of Plaintiff and against the Defendant LOUIS DREYFUS CORPORATION for the amount of USD 211,040.00 pled herein, as well as for interest, costs, and attorneys' fees pursuant to Chapter 38 of the Texas Civil Practices and Remedies Code;

C. That the Court grant Plaintiff such other and further relief as may be just, equitable, and proper.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Date: September 12, 2014<br>Oyster Bay, New York | CHALOS & CO, P.C.<br><br>/s/ George M. Chalos<br>George M. Chalos<br>Texas Bar No. 24077854<br>Federal Id No. 623727<br>55 Hamilton Avenue<br>Oyster Bay, NY 11771<br>Telephone: (516) 714-4300<br>Facsimile: (516) 750-9051<br>Email: gmc@chaloslaw.com<br><br>*Attorneys for Plaintiff*<br>**PHAETHON INTERNATIONAL CO. S.A.** |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| PHAETHON INTERNATIONAL CO. S.A., | § | |
| | § | |
| Plaintiff, | § | Civil Action No.: |
| | § | |
| -against- | § | ADMIRALTY |
| | § | |
| LOUIS DREYFUS CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## VERIFICATION OF COMPLAINT

Pursuant to 28 U.S.C. §1746, I, ANDRIY KOZMINYKH, declare under the penalty of perjury:

1. I am a representative of PHAETHON INTERNATIONAL CO. S.A., and authorized to act on the company's behalf.

2. I have read the foregoing Verified Complaint and know the contents thereof, and

3. I believe the matters to be true based on documents and information obtained from employees and representatives of the Plaintiff through its agents, underwriters and attorneys.

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully Submitted,

Date: September 11, 2014
Odessa, Ukraine

By: _____
ANDRIY KOZMINYKH
Representative of PHAETHON
INTERNATIONAL CO. S.A.

1